**In Re Jon Timothy MICHAELSEN, dba Michaelsen Enterprises, Debtor.**

**Bankruptcy No. BK–R–86–1289.**

United States Bankruptcy Court,
D. Nevada.

May 13, 1987.

Geoffrey Giles, Reno, Nev., for debtor.

Newel B. Knight, Stephens, Kosach, Knight and Edwards, Reno, Nev., for Osterhus.

Sallie B. Armstrong, Hale, Lane, Peek, Dennison and Howard, Reno, Nev., for Romanos.

## MEMORANDUM DECISION

JAMES H. THOMPSON, Bankruptcy Judge.

The debtor filed his petition for relief under chapter 13 on October 23, 1986 with confirmation of the chapter 13 plan finally set for hearing on February 17, 1987. Several objections were filed by creditors in opposition to confirmation of the plan. The objections filed that are now before the court, challenge the debtor's eligibility to be a chapter 13 debtor. The relevant statute is 11 U.S.C. § 109(e) which provides in relevant part that:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 ... may be a debtor under chapter 13 of this title.

The objecting creditors claim that the unsecured debts which must be paid under the plan include unsecured, noncontingent and liquidated debts as of the date of the filing of the petition which were substantially in excess of the $100,000.00 jurisdictional limitation.

## FACTS

Osterhus and Romano, objecting creditors, each entered into a contract with Mr. Michaelsen, the debtor. Both creditors agreed to purchase from the debtor an unimproved lot on which the debtor agreed to construct a custom home. The Osterhus contract was entered into on March 5, 1985 and escrow was to close on or before May 30, 1985. The Romano contract was entered into in November of 1985 and escrow was to close on or before February 26, 1986. Neither house was complete on the date the petition was filed.

Shortly after the agreements of sale were entered into, Osterhus paid the debtor $50,000.00 and Romano paid $48,000.00. Osterhus and Romano claim that these amounts were to be used to purchase the lots. The debtor claims that these amounts were deposits. In addition, Osterhus paid $126,582.00 and Romano paid 83,199.00 for construction costs.

After paying the debtor for the lots and construction costs, Osterhus and Romano discovered that the lots were owned by the debtor's father and were encumbered by several deeds of trust and mechanic's liens. The debtor did finally acquire title to the property from his father on December 1, 1986. The lots remain subject to approximately $35,000.00 in encumbrances on each.

As a result of their transactions with the debtor, Osterhus filed suit in state court on June 26, 1986 claiming damages and equitable relief. Romano was in the process of preparing a state court complaint when the bankruptcy petition was filed.

The debtor's schedules, as originally filed, do not list the objecting creditors but the schedules do disclose creditors having priority with claims totaling $60,852.00, and unsecured claims without priority in the amount of 32,967.70. The schedules were subsequently amended by adding five creditors, including Osterhus and Romano. The five claims were all listed as secured and disputed. The amount of each claim was stated as one dollar. Several creditors not listed in the debtor's schedules have filed proofs of claim.

## DISCUSSION

The issue before the court is whether, under the facts presented, the debtor, on the date of the filing of the petition, had noncontingent, liquidated, unsecured debts of less than $100,000.00. 11 U.S.C. § 109(e). To make this determination, the court will first review the debtor's schedules and any proofs of claim that have been filed. The court will then address whether the Osterhus and Romano claims constitute noncontingent, liquidated, unsecured debts within the context of § 109(e).

As a preliminary matter, at the hearing on February 17, 1987, the debtor testified that he owed, on the date the petition was filed, some amount, not listed in the schedules, to Dickson Electric. It was later alleged that the debt was approximately $33,-000.00 and was paid by the debtor's brother with a lot the debtor had previously transferred to his brother. Debtor's counsel suggested at the hearing that this matter was the subject of some ongoing transaction that had not been fully presented to the court. Had this matter been more fully developed, it might have been dispositive. However, since the only evidence of the amount of the debt was a representation of creditor's counsel, and since debtor's counsel indicated that there may have been some explanation, the court will not include it in the § 109(e) calculation.

■ The debtor's schedules list priority claims totaling $60,852.00, and unsecured claims without priority in the amount of $32,967.70. For the purposes of § 109(e) priority claims are included in computing the $100,000.00 unsecured debt threshold. *In re Tashman*, 13 B.R. 549, 550 (Bankr.D. Vt.1981); *see also, In re Hutchens*, 69 B.R. 806 (Bankr.E.D.Tenn.1987) (court assumes

tax debts included in § 109(e) computations), and *In re McMonagle,* 30 B.R. 899, 903 (Bankr.D.S.D.1983).

The debtor's schedules include a debt owed to Nevada National Bank in the amount of $5,960.78 secured by a truck valued at $5,075.00. Therefore, the unsecured portion of the debt is $885.78 and must be included in the § 109(e) computations. *In re Day,* 747 F.2d 405, 407 (7th Cir.1984).

Except for the claims filed by Osterhus and Romano, the court has compared the filed proofs of claim with the claims listed by the debtor and has discovered that the following claims have apparently not been listed by the debtor:

| Creditor's name | Date filed | Amount |
|---|---|---|
| Kim Michaelsen | 2/11/87 | $3,000.00 |
| Kim Michaelsen | 1/13/87 | 1,000.00 |
| Norman Bennett | 2/13/87 | 1,755.00 |
| Business & Professional collection service | 2/18/87 | 2,475.77 |
| | | $8,230.77 |

When above claims are included in the figures scheduled by the debtor, noncontingent, liquidated, unsecured debts total:

| | |
|---|---|
| Priority claims | $ 60,852.00 |
| Unsecured claims scheduled | 32,967.70 |
| Unsecured portion of Nevada National Bank claim | 885.78 |
| Claims not listed | 8,230.77 |
| | $102,936.25 |

Although the above analysis indicates that the court need not reach the issue of whether the Romano and Osterhus claims constitute noncontingent, liquidated, unsecured debts within the meaning of § 109(e), the court will do so since part of the listed priority tax claims ($9,413.95) appear to be secured by a Federal Tax Lien and should not be included in the above calculation. Accordingly, if the Romano and Osterhus claims total at least $6,477.70 (102,936.25 − 9,413.95 + 6,477.70 = 100,000.00) and that amount is noncontingent, liquidated and unsecured, the debtor does not qualify as a chapter 13 debtor under § 109(e).

When the debtor's schedules were amended, the Osterhus and Romano claims were included with secured claims. The debtor has not indicated how the claims are secured, and nothing presented to the court would indicate that the claims are secured.

The court will, therefore, treat the claims as unsecured.

█ The interpretation of § 109(e) eligibility controlling in this circuit, is stated in *In re Sylvester,* 19 B.R. 671 (Bankr. 9th Cir.1982). There, the court held that Congress intended that individuals who owe unsecured debt in excess of $100,000.00 at the commencement of the case are ineligible for Chapter 13, even though the debtor disputes all or part of the indebtedness. 19 B.R. at 673. Only contingent or unliquidated debts are excluded from the computation and the court must determine the liquidated amount of any disputed claim. 19 B.R. at 673; *cf. In re Burgat,* 68 B.R. 408 (Bankr.D.Colo.1986) (nature of defense determines whether to include disputed claim). *But see In re Pearson,* 773 F.2d 751 (6th Cir.1985); *In re Lambert,* 43 B.R. 913 (Bankr.D.Ut.1984). The court, therefore, turns to the nature of the Osterhus and Romano claims.

The objecting creditors have limited their arguments relating to § 109(e) eligibility to their claims totaling $98,000.00 representing amounts initially paid to the debtor. The objecting creditors argue that these amounts were to be applied by the debtor solely to acquire lots, and, because the debtor misapplied the funds, he now can not convey good title to the lots. The debtor claims that the $98,000.00 was paid as a deposit and not for any specific purpose. The debtor testified at the first meeting of creditors that if a buyer pays cash, then the transaction is viewed as a deposit "and the lots will be deeded over to the buyers at the close of escrow." Transcript of § 341 hearing, testimony of Jon Michaelsen, p. 11. The evidence presented at the February 17, 1987 hearing is contrary to the debtor's position.

The agreement of sale and deposit receipt entered into by the debtor and Mr. and Mrs. Osterhus on March 5, 1985 provides:

RECEIVED FROM Glenn and LaVerne Osterhus the sum of $500 (Five Hundred Dollars) ... as deposit on ac-

count of the purchase price ..., upon the following terms and conditions:

1. Purchaser to pay 50,000 to builder 8 MAR 85 to pay for lot. Remainder of purchase price to be paid in cash @ closing.

The Romano agreement did not provide that any funds were to be used to purchase a lot. However, the debtor's budget provided that $48,000.00 was budgeted for land, and that a previous draw had been made in the amount of $48,000.00. This left an amount listed on the budget for land, captioned "balance to complete", of $0.00.

■ Based on the evidence presented, the court concludes that the initial $98,-000.00 paid by Osterhus and Romano was intended to be used to purchase the lots and was not intended to be used for other purposes. There is no dispute that the debtor, for what ever reason, had failed to purchase the lots as required by his contracts. Further, although the debtor has acquired the lots from his father after the Chapter 13 petition was filed, the lots remain subject to approximately $70,000.00 in encumbrances. The court, therefore, concludes that on the date he filed his Chapter 13 petition, the debtor had breached his contracts with Osterhus and Romano. The court now must determine whether the debtor's breach of contract constitutes a noncontingent, liquidated debt.

A debt is defined by the Bankruptcy Code as a "liability on a claim". 11 U.S.C. § 101(11). A claim is defined as follows in 11 U.S.C. § 101(4):

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The legislative history of 11 U.S.C. § 101(4) reveals that Congress intended to give the term "claim" an extremely broad meaning. The House Report indicates that the term "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." H.R.Rep. No. 595, 95th Cong., 2d Sess. 309, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6266; *see also,* S.Rep. No. 989, 95th Cong., 2d Sess. 21–22, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5807–08.

■ Having characterized the debtor's transactions with Osterhus and Romano as breaches of contracts, and in light of the broad meaning of the term "claim", the court concludes that these transactions constitute debts as defined in § 101(11), and as used in § 109(e). The only remaining questions are whether the debts are contingent and liquidated.

In *In re All Media Properties,* the court defined the term contingent as follows:

[C]laims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

5 B.R. 126, 133 (Bankr.S.D.Tex.1980).

■ In other words, a debt is contingent only if the debtor's liability on the claim arises after the occurrence of some condition precedent reasonably contemplated by the debtor and the creditor at the time of the event giving rise to the claim. *In re Albano,* 55 B.R. 363, 366 (Bankr.N.D. Ill.1985). The classic examples of contingent debts that fit the foregoing definition and explanation are the guarantor or surety situations, or tort claims on which no judgment has been entered. *In re Blehm,* 33 B.R. 678, 679 (Bankr.D.Colo.1983). In the guarantor or surety situation, the debtor's liability is conditioned on default of the

primary obligor. Tort claims are conditioned on proof of liability and entry of judgment. *Id.* A claim for breach of contract, on the other hand, is not contingent, although it may be disputed. If court action is necessary to recover from the breaching party, "the court is simply forcing the breaching party to discharge an existing duty." *Id.* at 680 (citing W. Drake & J. Morris, *Eligibility for Relief Under Chapter 13*, 57 Am.Bankr.L.J. 195 (1983), citing *In re All Media Properties, Inc.*).

 Here the debtor's liability was created by the debtor's failure to acquire the lots he was required to acquire under the contracts. The debtor used the funds provided by Osterhus and Romano for some other purpose and has only recently acquired the lots subject to approximately $70,000.00 in encumbrances. No subsequent extrinsic event is necessary to trigger the debtor's liability for his breach. Accordingly, the Osterhus and Romano claims are not contingent, but merely disputed by the debtor. Therefore, the court must determine the liquidated amount of the disputed Osterhus and Romano claims. *Sylvester*, 19 B.R. at 673.

The *Sylvester* court adopted the following definition of the term "liquidated" for the purposes of § 109(e) from *In re Bay Point Corp.*, 1 B.C.D. 1635 (D.N.J.1975):

> The concept of liquidation has been variously expressed. The common thread ... has been ready determination and precision in computation of the amount due.... Some cases have stated the test as whether the amount due is capable of ascertainment by reference to an agreement or by simple computation.

 The Osterhus and Romano transactions, as construed by the court, involved a contract under which Osterhus and Romano paid a combined amount of $98,000.00 to the debtor, who was to acquire lots with the money. On the date the petition was filed, the debtor had not acquired the lots, and did not have the funds to do so. The court, therefore, finds that, by reference to the contract of the parties, that the Osterhus and Romano combined claims are liquidated to the extent of $98,000.00.

## CONCLUSION

Having found the Osterhus and Romano claims against the debtor are noncontingent, liquidated, unsecured debts in the amount of $98,000.00, and, when combined with the debtor's other unsecured debts on the date of the filing of the petition, such debts exceed $100,000.00, it is held that the debtor is not eligible to be a Chapter 13 debtor under 11 U.S.C. § 109(e). Accordingly, the debtor shall be given 10 days to move for conversion to another chapter. In the absence of such motion, the debtor's Chapter 13 case shall be dismissed.