In re Tiffany Ann ARCELLA–COFF-
MAN, aka Tiffany A. Arcella dba Au-
tomated Reporting Management Sys-
tems, Inc., Debtor.

No. 03–64670.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Dec. 8, 2004.

Stephen M. Maish, Esq., Catherine L. Molnar–Boncela, Esq., Maish & Mysliwy,

Attorneys at Law, Hammond, IN, for debtor.

Samuel T. Miller Esq., Munster, IN, William H. Tobin Esq., Holland, IL, for creditors.

## ORDER ON DEBTOR'S MOTION TO CONVERT

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This matter is before the Court with respect to the contested matter arising from the debtor's motion to convert her Chapter 7 case to a case under Chapter 13, and the objections of Automated Reporting Management Systems and Robert Abraham to that motion. The Court has jurisdiction to enter a final determination in this contested matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and (b)(1), and N.D. Ind. L.R. 200.1. This matter is a core proceeding as defined by 11 U.S.C. § 157(b)(2)(A), (L) and (O).

By order entered on August 5, 2004, the Court preliminarily stated the legal parameters which were deemed applicable to resolution of the contested matter. Pursuant to the Court's and the parties' mutual determination of procedural processing issues at the hearing held on July 22, 2004, that order directed the parties to submit "offers of proof" concerning whether certain obligations or potential obligations of the debtor constituted "liquidated" debts for the purpose of the eligibility criteria of 11 U.S.C. § 109(e). The order scheduled an evidentiary hearing for December 16, 2004 regarding the debtor's eligibility to obtain Chapter 13 relief under the debt limitations stated in § 109(e).

The issue at the heart of this contested matter is whether the debtor has "noncontingent, liquidated, unsecured debts of less than" the applicable Chapter 13 eligibility ceiling of $290,525.00 stated in 11 U.S.C. § 109(e). The parties have submitted voluminous materials in accordance with the August 5th order, and have done an exemplary job in doing so. The Court has reviewed those materials, and upon that review has determined, for the reasons herein set forth, that the evidentiary hearing scheduled for December 16, 2004 is not necessary to resolve this contested matter. Based upon the Court's view of applicable law, and the record in this case, the debtor does not qualify for Chapter 13 relief; no further submissions from the parties are necessary.

### Legal Standards for Determination of "Liquidated" Debt

In the August 5, 2004 Order Scheduling Trial, the Court generally advised the parties of its view concerning the concept of a "liquidated" debt under the provisions of 11 U.S.C. § 109(e). A more thorough recitation is now necessary to state the criteria which this Court will apply both in this case, and in subsequent cases.

This case arises from a motion to convert the debtor's Chapter 7 case to a case under Chapter 13. That conversion was sought pursuant to 11 U.S.C. § 706(a), which states in pertinent part:

(a) The debtor may convert a case under this chapter [Chapter 7] to a case under chapter 11, 12 or 13 of this title at any time, if the case has been not been converted under section 1112, 1208, or 1307 of this title.

11 U.S.C. § 706(d) states a condition for the debtor's requested conversion, as follows:

(d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

In order for the debtor's conversion motion to be granted, the debtor must be

eligible for relief under Chapter 13. At issue in this contested matter is whether the debtor qualifies for Chapter 13 relief under the debt ceilings stated in 11 U.S.C. § 109(e) in pertinent part as follows:

> (e) Only an individual with regular income that owes, **on the date of the filing of the petition,** noncontingent, liquidated, unsecured debts of less than [$290,525][1] ... may be a debtor under chapter 13 of this title.

Based upon the record, the issue in this case concerning the unsecured debt ceiling revolves around the concept of "liquidated" debt. The concept of "noncontingent" debt is not implicated in the Court's analysis.

The Bankruptcy Code itself gives only suggestions to resolution of the issue at hand. Recall that § 109(e) states that the relevant factor in the debt ceiling is "noncontingent, liquidated, unsecured **debts**" (emphasis supplied). "Debt" is a defined term in 11 U.S.C. § 101(12); the term "means liability on a claim". The term "claim" is also a defined term, as stated as follows in 11 U.S.C. § 101(5):

> (5) 'claim' means—

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgement, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[2]

The foregoing definitions make clear the fact that a "claim" is a "right to payment", whether or not the debtor has been determined to be "liable" with respect to the asserted "right to payment".[3]

■ But § 109(e) uses the term "unsecured debts", not the term "unsecured claims". What then differentiates a "claim" from a "debt"? As stated in § 101(12), it is *liability* of the debtor with respect to a claim that causes a "claim" to become a "debt". There must therefore be some threshold determination of the debtor's probable liability on a "claim" before a claim can become a "debt" for the purposes of § 109(e).[4]

---

1. The debt ceiling is adjusted periodically pursuant to 11 U.S.C. § 104(b). For the 3 year period beginning April 1, 2001 (that applicable to this contested matter), the ceiling for unsecured debt in a Chapter 13 case is $290,525.00, as established by notice dated February 20, 2001 by the Judicial Conference of the United States [66 F.R. 10910].

2. Note that § 101(5)(B) does not include the concepts, as stated in § 105(A), of "liquidated, unliquidated". This fact of statutory distinction is of no moment in this case, but it's interesting to note, isn't it?

3. This dovetails nicely into 11 U.S.C. § 502(a), which provides that a "**claim** or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." Thus, a "claim" is *the assertion* that a debtor is liable

to a creditor for a monetary obligation of some kind based upon a "right to payment". The proof of claim is a statement under oath that the creditor has a claim against the debtor; B.R. 3001. A "claim" becomes a "debt" for the purposes of a bankruptcy case when the claim is "allowed", which can be effected by several different mechanisms not pertinent to this case.

4. In *In re Knight,* 55 F.3d 231, 234 (7th Cir. 1995), the Seventh Circuit stated: "The terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." The Court deems this analysis to have been made within the factual context of *Knight,* in which the evidentiary record made clear the fact that the debtor was liable for a civil penalty based upon a criminal plea agreement, despite the

**468**

11 U.S.C. § 109(e) goes further. Not only must the debtor have "unsecured debts" which do not exceed the statutory ceiling; those "debts" must also be "noncontingent" and "liquidated". The problem which all courts have faced with respect to § 109(e) in the context of this case—remembering as we must that the concept of a "noncontingent" debt doesn't play into the factual analysis necessary to resolve this contested matter—is to develop an analytical framework to determine when a "debt" is either "liquidated" or is "unliquidated".

There are as many judicial approaches to the concept of "liquidated" debt, and the procedural mechanisms by which it is determined for the purpose of § 109(e), as Carter has pills. To savor the divergence of approaches without swallowing something, one need only read *Norton Bankruptcy Law and Practice 2d*, Analysis, Vol. 5, § 115:5 (Clark, Boardman, Callaghan, 1997). This Court is of course bound by pronouncements by the Supreme Court of the United States, the United States Court of Appeals for the Seventh Circuit, and the

United States District Court for the Northern District of Indiana. Apart from those binding authorities, other courts' opinions are instructive, but not directive.

The United States Court of Appeals has addressed the issue of a "liquidated" debt in the case of *In re Knight*, 55 F.3d 231 (7th Cir.1995). As stated in that decision:

The fact that Mr. Knight contests this claim does not remove it as a claim under § 109(e) or render it unliquidated. *In re Jordan*, 166 B.R. 201, 202 (Bankr. D.Me.1994) ("[T]he vast majority of courts have held that the existence of a dispute over either the underlying liability or the amount of a debt does not automatically render the debt either contingent or unliquidated."). More fundamentally, the cases uniformly provide the method for determining whether a debt is liquidated: "If the amount of a claim has been ascertained or can readily be calculated, it is liquidated—whether contested or not." Norton, *supra*, § 18:12 at 18–48. *See In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987) ("[T]he question whether a debt is liqui-

fact that no civil proceedings had been commenced by the State of Indiana prior to the filing of the debtor's bankruptcy case to assert the civil penalty. But it cannot be that a creditor's mere assertion of a "claim" against a debtor *ipso facto* results in the inclusion of the amount of that claim in the § 109(e) calculation, in a context in which the legal theories of liability necessary to establish the debtor's liability necessitate the submission of extensive evidence, and the exercise of judgment by either a jury or a judge, to determine the threshold issue of the debtor's liability to a creditor. Were this not the case, given that *Knight* so clearly allows filed claims to be considered in the eligibility determination process, **any** claim asserted by a creditor will count toward the debt ceiling so long as the amount of that claim can be determined by relatively simple evidence and mathematical process not requiring the exercise of judgment by the factfinder—no matter how lacking in any sustainable legal basis

that claim might be. It is more appropriate to view *Knight's* pronouncement that a "claim" and a "debt" are the same thing in the context, as existed in *Knight*, of a liability which had been nearly conclusively established by prior proceedings but which had not been reduced to an enforceable monetary obligation at the time the Chapter 13 case was filed. Were this not the case, if Mr. Knight had merely been under investigation at the time he filed his case, rather than the subject of a prepetition plea agreement, the State's mere assertion of potential culpability for alleged criminal conduct would have triggered a "liquidated" debt even though no action had been commenced to rebut the Constitutional presumption of innocence to which Mr. Knight would have been entitled as a criminal target. This would be a preposterous, and very likely Constitutionally infirm, result, and therefore the broad general language of *Knight* must be limited to the facts before the Court of Appeals in that case.

dated turns on whether it is subject to 'ready determination and precision in computation of the amount due.' ") (citations omitted).[4]

55 F.3d at 235.

Exactly what constitutes a debt "subject to 'ready determination and precision in computation of the amount due'" is not made clear by the case. This statement is followed in the decision by a footnote which cites to four cases: review of the "gloss" stated by the Seventh Circuit in that footnote 4 with respect to the holdings in those cases, and review of the cases themselves, provides additional illumination on the standards to be applied to the issue at hand. The Seventh Circuit cites the case of *In re McGovern*, 122 B.R. 712 (Bankr.N.D.Ind.1989) [Honorable Robert E. Grant] for the proposition that a debt is liquidated "because amount of liability was readily discernable by reference to an agreement or through simple mathematics". The *McGovern* decision further states the following with respect to the concept of a liquidated debt:

A claim is often characterized as liquidated if the amount due can be readily ascertained either by reference to an agreement or through simple mathematics. *In re Sylvester, supra,* 19 B.R. [671] at 673 [(9th Cir. BAP 1982)]; *In re Michaelsen,* 74 B.R. 245, 250 (Bankr. D.Nev.1987); *In re Williams,* 51 B.R. 249, 250 (Bankr.S.D.Ind.1984); *In re Flaherty,* 10 B.R. 118, 120 (Bankr. N.D.Ill.1981).

[I]f the amount of the claim can be ascertained, or is capable of ascertainment by mere calculation or computation, it is liquidated; if judgment, discretion, or opinion, as distinguished from calculation or computation is required to determine the amount of the claim, it is unliquidated. *First National Bank v. Insurance Co.,* 606 F.2d 760, 769–70 (7th Cir.1979) (applying Illinois law). *See also Public Service Co. v. Bath Iron Works Corp.,* 773 F.2d 783, 796 (7th Cir.1985) (applying Indiana law).

Thus, a claim is unliquidated when the finder of fact must rely upon its judgment to establish an appropriate amount to compensate for past and future injury. *See Public Service Co. v. Bath Iron Works Corp., supra,* 773 F.2d at 796. It is liquidated when judgment or discretion is not required.[1]

1. The need to use judgment in determining the amount of liability must be distinguished from the judgment which must necessarily be used to determine the existence of liability. A court or a jury will always be required to exercise its judgment in determining the fact of liability. The assessment of damages, however, does not always require the court or the jury to do so. *See Lystarczyk v. Smits,* 435 N.E.2d 1011, 1015 (Ind.App.1982); *Indiana Industries, Inc. v. Wedge Products,* 430 N.E.2d 419, 427 (Ind.App.1982).

122 B.R. at 715. The case of *In re Pulliam,* 90 B.R. 241 (Bankr.N.D.Tex.1988) is cited for the proposition that claims are liquidated when they are ascertainable from guaranty contracts and promissory notes. That decision states the following with respect to the concept of a liquidated debt:

"Liquidation ... refers to certainty as to the money value of the [debt]." *Albano,* 55 B.R. at 367. It is the character of the debt and not of any defense that determines whether a debt is liquidated. The existence of a dispute over part or all of a debt does not convert the debt from a liquidated one to an unliquidated one. C. McCormick, *Damages* § 54 (1935).

The Fifth Circuit has recognized that debts based on tort and quantum meruit claims are generally unliquidated until resolved by judicial decree or otherwise because the plaintiff's damages are not

fixed. *Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376, 1380 (5th Cir.1971).

90 B.R. at 246.

The case of *In re Albano*, 55 B.R. 363 (N.D.Ill.1985) is cited for the proposition that the concept of "(*l*)iquidation ... refers to certainty as to the money value of the claim"; 55 B.R. at 367, which is exactly what that case states. Finally, *In re Williams*, 51 B.R. 249 (Bankr.S.D.Ind. 1984) is of little help, as it is cited for, and principally addresses, the concept that a disputed claim does not preclude the claim's being a liquidated debt.

The Seventh Circuit has shed a bit more light on the concept, in reference to Illinois law relating to whether or not pre-judgment interest may be awarded on a claim, in the case of *First National Bank Company of Clinton, Illinois v. Insurance Company of North America*, 606 F.2d 760 (7th Cir.1979). The concepts under applicable Illinois law appear to be parallel to the concepts employed by the Seventh Circuit in *Knight, supra:*

> Thus the rule has evolved that for interest to be awarded under the Illinois statute, the sum due must be liquidated; that is, be subject to exact computation; and the existence of a good faith defense does not preclude recovery of interest. [citations omitted] In other words, if the amount of a claim can be ascertained, or is capable of ascertainment by mere calculation or computation, it is liquidated; if judgment, discretion, or opinion, as distinguished from calculation or computation is required to determine the amount of the claim, it is unliquidated. The proofs of loss which the bank submitted to the insurance companies contained a claim that was capable of ascertainment by mere calculation or computation. Thus, it was liquidated; and the fact that the

ultimate judgment entered was less than the sum claimed did not make the amount unliquidated.

606 F.2d at 769–770.

Underlying the foregoing pronouncement is the concept that the matter at issue between the plaintiff and the defendant did not involve a dispute as to liability, but rather a dispute as to "how much" liability.

Finally, instruction may also be drawn from the views of other courts as to the principal pronouncements of *In re Knight, supra*. Instructive is the following quotation from *Mazzeo v. United States*, 131 F.3d 295, 304 (2nd Cir.1997):

> The terms "liquidated" and "unliquidated" generally refer to a claim's value (and the size of the corresponding debt) and the ease with which that value can be ascertained. *See, e.g., United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir. 1996); *In re Knight*, 55 F.3d at 235; *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987). "The concept of liquidation for purposes of section 109(e) relates only to the amount of liability not the existence of liability," *United States v. Verdunn*, 89 F.3d at 802 n. 10. If "the value of the claim is easily ascertainable," it is generally viewed as liquidated. *In re Knight*, 55 F.3d at 235. If that value depends instead on "a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." *United States v. Verdunn*, 89 F.3d at 802.
>
> Thus, the "courts have generally held that a debt is 'liquidated' ... where the claim is determinable by reference to an agreement or by a simple computation." 2 L. King, *Collier on Bankruptcy* ¶ 109.06[2][c] (15th ed. rev.1997); *see, e.g., In re Knight*, 55 F.3d at 235 (debt is liquidated if its value "has been ascertained or can readily be calculated"); *In re Fostvedt*, 823 F.2d at 306 (debt is

liquidated if it is "subject to ready determination and precision in computation of the amount due" (internal quotation marks omitted)); *In re Nicholes,* 184 B.R. [82] at 89 [(9th Cir. BAP 1995)] ("The test for 'ready determination' is whether the amount due is fixed or certain or otherwise ascertainable by reference to an agreement or by a simple computation."). A claim plainly is liquidated if its amount is made certain "by operation of law." *United States v. Verdunn,* 89 F.3d at 802.

It should be apparent from the foregoing that most courts have aligned the concept of "liquidated" with the concept of "claim". Taken to its logical extreme, this results in principle that an assertion of liability by a creditor causes a "claim" to be liquidated if the amount of damages to which the creditor is potentially entitled can be determined by a relatively simple mathematical computation which does not require the factfinder to exercise "judgment" in arriving at the monetary award. Whether or not the debtor is "liable" on the "claim" doesn't matter: most cases that follow the foregoing approach *assume* the debtor is liable, and focus only on the relative mathematical ease of computing damages. With all due respect, this focus on damages totally ignores the definition of "debt" in 11 U.S.C. § 101(12), which requires not only the assertion of a "claim" by the creditor, but also "liability" of the debtor with respect to the asserted right to payment. Clearly, focusing solely on the damage element of a monetary cause of action begs the question, and the definition, of "debt", both as used in § 101(12) and in § 109(e). The eligibility of a Chapter 13 debtor is not determined by the amount of "claims"; it is determined by the amount of "debts". In a legal proceeding to actually "liquidate" a claim, one does not get to the damage determination until the threshold issue of liability has been determined

adversely to the defendant. Given the statutory language analyzed above, it simply cannot have been Congress' intent that § 109(e) debt ceiling determinations are to be made by assuming that a debtor is liable on any, and every, claim asserted by a creditor, or on every "claim" stated in a debtor's schedules which the debtor denotes as being merely "disputed".

■ And what of the concept of a "disputed" claim/debt? Nearly every court confronting this issue has held that a "dispute" by the debtor with respect to a "claim" does not cause the "debt" to be "unliquidated". Consider the phrasing of the preceding sentence, because that is how the cases actually analyze the issue: a "debt" is assumed if an obligation/liability is listed in a set of schedules, and checking the "disputed" column may cause the debt to be deemed liquidated even if liability is strongly and legitimately contested. The Court is of the opinion that what is meant to be conveyed by the cases that state that a dispute as to a debt does not *ipso facto* cause the debt to be unliquidated, is that the debtor's mere refusal to admit liability for, and the amount of, a claim will not negate a finding that a debt exists in an amount capable of easy mathematical computation. It is the good faith of the dispute, particularly with respect to the underlying issues of the debtor's liability— and not the statement that there is a dispute—that is relevant for the purpose of § 109(e).

■ Against the foregoing analysis, let's examine *In re Knight* again. The principal test stated in the decision is drawn from *In re Fostvedt,* 823 F.2d 305, 306 (9th Cir.1987): "[T]he question whether a debt is liquidated turns on whether it is subject to 'ready determination **and** precision in computation of the amount due.'" (citations omitted) [emphasis supplied]. Prop-

erly understood, this test has two components: *ready determination*, which focuses on the debtor's liability on a claim, **and** *precision in computation of the amount due*, which focuses on the monetary award to the creditor when a debtor is found to be liable. Were this not the case, every inchoate potential tort liability of a debtor with respect to a motor vehicle accident which occurred prior to the filing of the bankruptcy petition would be "liquidated" with respect to lost wages and medical expenses of the "victim" asserting the claim, even though the debtor's negligence had yet to be determined. The same can be said for any number of complicated civil liability issues—so long as the amount of damages can be easily calculated from simple evidence, the debt would be deemed to be "liquidated" to that extent. This cannot be what the concept of "liquidated" means, as the Ninth Circuit BAP, affirmed by the Ninth Circuit Court of Appeals—the source of the *Knight* test—stated in *In re Wenberg*, 94 B.R. 631, 634–635 (9th Cir. BAP 1988); *aff'd* 902 F.2d 768 (9th Cir. 1990):

> The definition of "ready determination" turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts **or liability.** On this issue, the bankruptcy judge has the best occasion to determine whether a claim will require an overly extensive hearing or whether the claim is subject to a bona fide dispute; therefore not subject to "ready determination." [emphasis supplied]

*In re Wenberg* was quoted again with approval by the Ninth Circuit Court of Appeals in *In re Slack*, 187 F.3d 1070, 1074 (9th Cir.1999).

The Seventh Circuit has not foreclosed the application of the simple hearing/extensive and contested evidentiary hearing dichotomy employed by the Ninth Circuit. In fact, this Court deems this standard to be included within the Seventh Circuit's directive that in order to be liquidated, a debt must be subject to "**ready** determination". As any standard dictionary will state, the word "ready" connotes a quality of immediate availability and promptness, something which an extended evidentiary hearing does not provide. As stated in *In re Hatzenbuehler*, 282 B.R. 828, 831–32 (Bankr.N.D.Tex.2002):

> A question that has arisen in numerous cases is at what point a dispute over a particular debt renders that debt unliquidated or contingent . . .

> . . .

> In providing guidance, the Court notes that it is of the utmost importance to debtors and creditors alike that a final determination on a particular debtor's eligibility for chapter 13 be made as early in the case as possible. Any solution that would require the Court to engage in a lengthy fact finding process would add dramatically to the cost of chapter 13, inject an unwarranted element of uncertainty into the section 109(e) analysis and hamper the rehabilitative goals of chapter 13.

In the context of dealing with the bugaboo of "disputed" debt, the *Hatzenbuehler* court cogently stated:

> In their schedules, Debtors have classified the Bank as a creditor holding a disputed claim. It seems sensible that, unless the equities of the case require a different result, a debt denominated as disputed should be included in the section 109(e) eligibility analysis if, on its face, it is a legally enforceable debt on the petition date. (Footnote omitted).

If, for example, the putative debtor was indebted on a note or other instrument, and the only dispute of that debt was a contested, fact-dependent defense to liability on the instrument, this rule would favor inclusion of the indebtedness in the section 109(e) analysis.

Conversely, where the dispute requires a creditor to establish the debtor's liability, the debt should not count for section 109(e) purposes. For example, if the payee under an instrument alleges that, under an alter ego theory, the debtor (rather than the named obligor) is the party actually obligated on the instrument, the debt should not be considered for purposes of determining eligibility for chapter 13. A facial review of the instrument would not indicate that the debt was a legally enforceable obligation of the debtor on the petition date.

As derived from the foregoing cases and analysis, the following criteria apply to the determination of whether a debt is "liquidated" or "unliquidated" for the purposes of 11 U.S.C. § 109(e):

■ 1. A debt is subject to "ready determination and precision in computation" if the debtor's liability and the amount due can "be readily ascertained either by reference to an agreement or through simple mathematics". If a factfinder must rely upon its judgment to establish liability, or to compute an appropriate amount to compensate for past or future injury, then the debt will be "unliquidated".

■ 2. Because the determination of both liability and damages ordinarily requires the exercise of judgment by the factfinder, claims based on tort and on quantum meruit are generally unliquidated, unless they have been resolved by a judicial decree or otherwise.

■ 3. A dispute as to liability, or as to the amount, does not, in and of itself, cause a debt to be unliquidated. The principal focus is on the ability of a factfinder to determine liability readily without extensive evidence or the exercise of judgment, and to determine the amount of the indebtedness by the application of relatively simple mathematical principles.

■ 4. To be "liquidated", both liability on a claim, and the amount of the debt once liability is established, must be capable of being determined in a relatively simple hearing, and must not require an extended evidentiary hearing for their determination.

■ The next issue is the time at which the § 109(e) analysis is to be employed. In a case which begins as a chapter 13 case, obviously the relevant time is the date of filing of the petition. Although this case derives from a chapter 7 proceeding, the relevant reference is the same: the date of the filing of the petition. This result is mandated by 11 U.S.C. § 348. Subparagraph (a) of that section states:

(A) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and © of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

There is nothing in subsections (b) or (c) of § 348 which changes the date of the filing of the petition from that of the date of filing of the Chapter 7 case. Moreover, § 348(d) provides that with respect to conversions under sections 1112, 1208 or 1307, a claim against the debtor or the estate that arises after the order for relief but before conversion "shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the

petition." Conspicuously absent from this section is mention of conversion under § 706, further indicating that only claims existing on the date of the filing of the chapter 7 petition are relevant because apart from claims under 11 U.S.C. § 503(b), no other claims exist in the chapter 13 case following conversion from chapter 7. Finally, section 109(e) begins with the condition that "(o)nly an individual with regular income that owes, **on the date of the filing of the petition** ... (less than the prescribed amount and types of debt) may be a debtor under chapter 13 of this title", thereby clinching, by application of 11 U.S.C. § 348(a), that the relevant date is the date of filing of the chapter 7 case; *In re Rohl,* 298 B.R. 95, 100 (Bankr.E.D.Mich.2003).

■ Remaining to be addressed is the procedural mechanism by which the § 109(e) determination is to be made. Following the lead of *In re Pearson,* 773 F.2d 751 (6th Cir.1985), a number of courts have held that essentially the sole focus of the calculation is the debtor's schedules, so long as the schedules were filed in good faith. This Court will not adopt the *Pearson* standard. The Seventh Circuit has no definitive case on this issue, and indeed appears to have determined only two cases which specifically address issues under 11 U.S.C. § 109(e): *Matter of Day,* 747 F.2d 405 (7th Cir.1984) and *In re Knight,* 55 F.3d 231 (7th Cir.1995). However, these two cases clearly stand for the proposition that the § 109(e) determination may be made by review of pertinent facts apart from those stated in the debtor's schedules. In *Day,* the Seventh Circuit held that the eligibility criteria of § 109(e) re-

quire the bifurcation of secured/unsecured claims under 11 U.S.C. § 506(a), a process which the facts of the case make clear involved consideration of evidence apart from the debtor's schedules.[5] As the Court stated, after applying relevant case law to the debtor's arguments that the existence of a lien alone, and not the actual value of collateral securing a claim, should control:

These decisions avoid the temptation to raise form over substance and represent a common-sense solution to a statutory interpretation problem not considered by Congress.... [A] contrary interpretation of section 109(e) could lead, at the limit, to the absurd situation where a prospective Chapter 13 debtor with $449,998 in unsecured debts creates a security interest for $349,999 in property with little or no value. If courts cannot look beyond the mere existence of documents creating such an interest, this maneuver produces secured debts of $349,999 and unsecured debts of $99,-999—amounts within section 109(e). Surely Congress did not intend for debtors to so easily circumvent the $100,000 limitation on unsecured debts in Chapter 13 proceedings.

747 F.2d 405, 407.

In *Knight,* the § 109(e) proceeding was premised on a proof of claim filed by the State of Indiana, and it is clear that evidentiary proceedings with respect to that claim, and not any matter stated in the debtor's schedules, were utilized to determine the § 109(e) eligibility issue.

Thus, the Seventh Circuit has very clearly modified the *Pearson* procedure: materials outside the schedules may be

---

5. The debtor's schedules had listed secured debts of $161,00 and unsecured debts of $65,000. However, evidence submitted by a creditor designated as "secured" in the schedules established that the $73,000 of "collater-

al" allegedly securing its debt did not exist, and thus was valueless, resulting in totally unsecured claim under § 506(a) which kicked the debtor over the § 109(e) debt ceiling.

taken into account in the § 109(e) determination.

■ In accordance with the Seventh Circuit's procedural parameters, this Court endorses the procedural parameters stated as follows in *Lucoski v. Internal Revenue Service,* 126 B.R. 332, 342 (S.D.Ind.1991):

Debtor/appellant is also correct in asserting that speedy resolution of Chapter 13 proceedings are favored. However, as previously noted, the Bankruptcy Court has the authority to extend the time limits for complying with Chapter 13 procedures. Further, this Court holds that the desire for a speedy resolution of the matter cannot override the necessity that those persons allowed to take advantage of Chapter 13 proceedings meet the eligibility requirements set forth in section 109(e). Thus, this Court finds that the Court may look beyond the schedules, and may find the debtor ineligible for Chapter 13 relief subsequent to the filing of the petition, if within a reasonable time after the filing of the petition, it is determined that the debtor, in actuality, exceeded one or both of the statutory maximum amounts set forth in section 109(e).

■ This Court also endorses the proposition that the natural "jumping off" place for § 109(e) review is the debtor's schedules, as those schedules provide the most illuminating—albeit at times artificially composed—"snapshot" of the debtor's debt structure as of the date of the filing of a case: presumably, the debtor is in a better position than anyone else to provide a synopsis of his/her assets and liabilities at that time. As stated in *In re Hatzenbuehler,* 282 B.R. 828, 833 (Bankr. N.D.Tex.2002):

Recognizing that a debtor's schedules are a potentially imperfect measure of a the debtor's debts, the Court concludes that a more appropriate approach is to use the debtor's schedules as a starting point in the section 109(e) inquiry, but also to consider postpetition events and developments to the extent (and only to the extent) they shed light on the amount of secured and unsecured debt actually owed by the debtor *at the time of the filing of the petition.* [footnote omitted]. For example, in a situation such as Debtors', where a secured debt is mistakenly scheduled as an unsecured obligation, it would exalt form over substance to refuse to consider a postpetition amendment to the schedules that properly classifies the indebtedness. Similarly, if it were to become evident postpetition that the conditions giving rise to a contingent liability all occurred prepetition, common sense requires recognition of the reality that the debtor was liable for the debt on the petition date. [emphasis in original].

As stated above, the relevant date upon which the § 109(e) determination is to be made in this case is the date of the filing of the **Chapter 7** petition. Thus, the pertinent schedules which provide the jumping off point for analysis are those reflective of matters as they existed on that date.

■ Finally, a word about the evidentiary effect to be accorded a debtor's schedules in a § 109(e) contest is in order. Schedules and Statements of Financial Affairs must be filed under oath; 11 U.S.C. § 521(1); B.R. 1007(b); Official Forms. In the context of this contested matter, statements in the debtor's schedules constitute admissions under Rule 801(d)(2) of the Federal Rules of Evidence, and as such are directly admissible. The debtor is of course in the best position to initially evaluate and state the nature, amount and

categorization[6] of his/her debts and property. Under the Court's methodology, the inquiry may proceed beyond the schedules, but the schedules remain a particularly relevant source of evidence because of the debtor's position to best state his/her financial circumstances. This is particularly so in the realm of debts owed to "insiders"—defined by 11 U.S.C. § 101(31)(A)(I) to include relatives of a debtor who is an individual. In this context, the sole source of evidence of the precise nature, amount and categorization of debts will in most cases be limited to the debtor and to parties whose relationships to the debtor have certain elements which may give rise to less than totally objective evaluation of the nature, extent and amount of a debt. Debts owed, or assertedly owed, to insiders are particularly troublesome, and require close scrutiny.

■■■■ This Court also approaches amendments to schedules circumspectually and circumstantially, and the element of qualitative proof provided by schedules—which the Court alone must weigh and determine—will be affected by the nature of amendments in the context of the issues in a contested matter, and the timing of the amendments in the context of issues to which the amendments apparently are intended to respond. It is tempting to develop a "bright line" rule, such as that employed in *In re Holland,* 293 B.R. 425, 428 (Bankr.N.D.Ohio 2002), in which amendments to schedules are essentially ignored, but the Court will not go that far. There are certainly circumstances in which subsequent review of financial matters presents a clearer and more accurate "snapshot" of those matters on the date of the filing of the petition than that stated in the initial filing. However, the nature and extent of multiple amendments, and/or the timing of amendments in relation to the initiation of proceedings to which the information stated in the amendments is relevant, are matters of which the Court independently may, and must, take consider. Amendments made on the eve of trial, or close in time after the initiation of a matter or proceeding in which the debtor would be disadvantaged by the schedules in their pre-amendment form—raise very concrete evidentiary issues as to the qualitative worth—"weight" if you will—to be given to the amendments; *See,* e.g., *In re Watkins,* 84 B.R. 246, 251 (Bankr.S.D.Fla.1988); *In re French,* 2003 WL 21288644 (Bankr. D.Vt.2003). As stated in *In re Faulhaber,* 269 B.R. 348, 352 (Bankr.W.D.Mich.2001):

> ... [I]t [is] within the bankruptcy court's discretion to determine debtor's eligibility based solely upon the Pearson's original schedules. Conversely, ... it [is] in the discretion of the bankruptcy court to also consider any amendment the debtor may have made to the schedules.

The focus of a proceeding under 11 U.S.C. § 109(e) is *not* to liquidate claims, except in the Seventh Circuit in the context of bifurcation of claims under 11 U.S.C. § 506(a), which necessarily involves at least a proceeding under B.R. 3012 with respect to claims which are otherwise liquidated and noncontingent at their base. The purpose is to determine, relatively quickly and relatively inexpensively (in terms of both monetary expense for the parties and expenditure of time by the parties and by the Court), what of the debtor's debts are "liquidated" and "non-

---

**6.** In the context of this case, "categorization" refers to the columns provided in the official forms upon which debts are scheduled, which provide an opportunity to designate debts as "contingent", "unliquidated" and "disputed".

The first two categories have obvious relevance to § 109(e) determinations. The concept of "disputed" primarily has relevance to the claim filing requirements of B.R. 3003(c)(2).

contingent", and of debts fulfilling those criteria, the dollar amount that are both secured and unsecured. As the ultimate fact-finder, the Court has discretion as to the manner in which this exploratory process will take place and the weight to be given evidence pertinent to the eligibility issues. This inquiry is not in the nature of a B.R. 7056 summary judgment proceeding: the raising of a genuine issue of material fact by a party does not preclude the Court's determination of the contested matter, based upon the record before it, without further evidentiary proceedings. The Court deems it to be imperative that procedures be employed which avoid evidentiary hearings at which judging the credibility of witnesses is necessary to determine the nature and amount of debts, especially in circumstances in which statements in the debtor's schedules allow the Court to circumstantially determine both the categorization and amount of debts for the purpose of the § 109(e) analysis.

### Factual Analysis

■ The jumping off place for analysis of the debtor's eligibility for Chapter 13 relief is a review of the debtor's schedules as those schedules reflect the debtor's debt structure on the date of the filing of her Chapter 7 petition. In this case, it's a short journey: the analysis begins and ends with the debtor's schedules.

The initial schedules were filed on September 25, 2003. Schedule F—which designates the debtor's unsecured creditors and the debtor's position as to their claims—was amended in the Chapter 7 case on October 21, 2003. On November 13, 2003, the debtor filed amendments to Schedules I and J, but no amendments were made to schedules designating the claims of creditors.

On December 24, 2003, Automated Reporting Management Systems and Robert Abraham initiated adversary proceeding number 03–6317, in which they contended that obligations of the debtor to them were excepted from discharge by provisions of 11 U.S.C. § 523(a).

On January 6, 2004, the debtor filed her motion to convert her Chapter 7 case to a case under Chapter 13. Also on January 6, 2004, the debtor filed another set of schedules, which included changes to Schedule D.

On January 22, 2004, Automated Reporting Management Systems and Robert Abraham filed their objection to the debtor's conversion motion. By the Court's order entered on January 29, 2004, a hearing was set for March 5, 2004 in the contested matter arising from those creditors' objections to the debtor's motion to convert her case to a case under Chapter 13. On February 26, 2004, the debtor filed amendments to Schedules D, E and F.

All told, since the debtor filed this case under Chapter 7 on September 25, 2003, she has amended portions of her schedules four times. Three of these amendments altered the designation of debts relevant to the § 109(e) determination. While the November 13, 2003 amendment did not, the fact that this amendment was made implies a review of the schedules that could have resulted in the correction of previously stated information if that correction had been deemed to be necessary to provide an accurate "snapshot" of the debtor's financial circumstances.

The designation of certain debts stated in the pertinent schedules has not changed since the filing of the initial schedules at the inception of the case; these debts have always been stated in a sum certain, and have never been designated as "contingent", "unliquidated" or "disputed". These are the following:

1. American Student Assistance, $1782.35;

2. Ameritech, $268.67;

3. Capital One, $1003.15;

4. Capital One, $2800.;

5. Community Hospital, $260.;

6. Federal Express, $29.20;

7. Mercantile National Bank of Indiana, $1550.50;

8. OSI Education Services, Inc., $2094.58;

9. WorldCom, $196.72.

The total of these debts is $9985.17. The Court finds that these debts are noncontingent, liquidated unsecured debts, and that these debts are countable toward the § 109(e) debt ceiling.

In the first three sets of Schedule F which the debtor filed, three other creditors' debts were not designated as contingent, unliquidated or disputed, as follows:

a. Net Nitco, $202.30;

b. SBC–Business, $447.63; and

c. VIA Marketing, $26,000.

In the last amendment to Schedule F—filed after the objection to the debtor's motion to convert her case to Chapter 13 was filed—these three debts were designated as follows:

a. Net Nitco, $202.30, unliquidated;

b. SBC–Business, $447.63, unliquidated and disputed; and

c. VIA Marketing, $26,000, contingent, unliquidated and disputed.

The interesting thing about these designations, apart from their timing, is that in the first reincarnation of her Schedule F, filed on October 21, 2003, the debtor added creditors Automated Reporting Management Systems as having an unliquidated, disputed "Business Debt" of 0.00; Kyle R. Strbiak as having an unliquidated, disputed debt for "Business" in an "unknown" amount; Laura Starcevich as having an unliquidated, disputed debt for "Business" in an "unknown" amount; and Sandy Mikhel as having an unliquidated, disputed debt for "Business" in an "unknown" amount. It is clear that the debtor, either alone or with counsel, reviewed her Schedule F unsecured debts, and was able to designate those which she deemed to be unliquidated or disputed—yet didn't change the designation of the foregoing three debts. By means of her original schedules, and two subsequent amendments, the debtor has in essence testified that the debts to Net Nitco, SBC–Business and to VIA Marketing were noncontingent, liquidated debts with which she had no dispute. The cumulative effect of these admissions, and the circumstances of the amendment which seeks to controvert them, causes the Court to find that the debts to Net Nitco, SBC–Business and to VIA Marketing [7] are noncontingent, liquidated unsecured debts for the purposes of the § 109(e) analysis, in the amount of $26,649.93.

Finally, by means of her original schedules, and in the first two subsequent amendments, the debtor has in essence testified that the debt owed to "The Pride Group", as a "Guaranteed Business Debt for Rent", is noncontingent, liquidated and

---

7. The debtor's "offer of proof" states that VIA Marketing garnished the debtor prior to the filing of this case, and that the amount of payments made should deducted from the amount of the debt to that creditor, but that the remaining balance is a noncontingent, liquidated debt. The Court is not going to conduct a hearing to determine the balance— the debtor has the information on the amount of the proceeds received by the creditor from garnishment, and in one of her amended schedules could have reflected the reduced amount of this debt. She failed to do so, and there is a consequence for failing to do that which was in the debtor's control to effect.

undisputed in the amount of $65,000. It was again only when the debtor was faced with a challenge to her § 109(e) eligibility for Chapter 13 conversion that this debt became designated, in the last of her amended Schedules F, as "contingent", "unliquidated" and "disputed". The debtor's "offer of proof" seeks to explain the nature of the debt, but it doesn't explain the 3:1 ratio in the debtor's Schedules F which categorized this debt as noncontingent and liquidated. The weight of the testimony is determined by the debtor's own sworn statements in the case record. The Court finds that the debt to the Pride Group in the amount of $65,000 is a noncontingent, liquidated debt, and that as such it counts toward the § 109(e) unsecured debt ceiling.

The total of the noncontingent, liquidated debts of the debtor on the date of the filing of her Chapter 7 case is $101,635.10 thus far.

In initial Schedule D, a secured debt claim was listed with respect to creditor Hammond Redevelopment Corporation in the amount of $50,000; the value of the collateral securing the claim was stated to be $300; the amount of the unsecured claim of this creditor [under the 11 U.S.C. § 506(a) bifurcation] was stated to be $47,700. The claim was not designated as "unliquidated", "contingent" or "disputed". Neither the amended schedules filed on October 21, 2003 nor those filed on November 13, 2003 changed anything about Schedule D's designation of this claim. The amendments January 6, 2004 corrected the obvious math error, by designating the unsecured portion of the claim to be $49,700, rather than the erroneous amount of $47,700 as previously stated. No other redesignation was made; due to the non-designation of the claim as otherwise in the designation columns provided in the Official Form, the claim remained de-

scribed as "liquidated", "noncontingent" and "undisputed". It was only when Schedule D was amended on February 26, 2004—after Automated Reporting Management Systems and Robert Abraham had filed their objections to the debtor's motion to convert her Chapter 7 to a case under Chapter 13—that this claim was designated as having the dysfunctions of being "contingent", "unliquidated" and "disputed". Thus, the amount of the unsecured portion of this debt was designated as "noncontingent" and "liquidated" in the debtor's schedules, including the January 6, 2004 amendment which *specifically* amended the designation of matters relating to this debt, *until* the debtor's eligibility for Chapter 13 relief was challenged. Based upon the record, the Court finds that the debtor's inconsistent statements of the designation of this debt must be resolved against her, and that pursuant to *Matter of Day, supra.*, the amount of $49,700 is counted as a "noncontingent", "liquidated" unsecured debt for the purpose of the § 109(e) analysis.

In the initial schedules, the debtor designated tax debts in Schedule E of $58,983.34 owed to the IRS and the Indiana Department of Revenue; these were designated as "disputed", but not as either "contingent" or as "unliquidated". Schedule E was amended by the amendments filed on January 6, 2004 to state the indebtedness to the IRS as $39,963.34, and the indebtedness to the IDR to be $6000; these debts were not designated as either "contingent" or as "unliquidated", and the subsequent amendments to the schedules filed after the initiation of this contested matter did not change the designation for these debts. Thus, these tax liabilities have never been designated by the debtor as anything other than "noncontingent" and "liquidated"; the Court accepts the amended amount of this debt as most recently stated by the debtor. The Court

finds that the total amount of $45,963.34 as stated in Schedule F filed on January 6, 2004 counts toward the "noncontingent", "liquidated" unsecured debt limit of § 109(e).[8] In this instance, this last amendment is credible as actually designating exact amounts which were merely estimated in prior Schedules, and thus the Court accepts this last amendment as the true statement of the debtor's debts entitled to priority.

The next point in the analysis will revolve around the debtor's designation of the debts of 3 "insiders": her husband, Michael Coffman; her mother, Judith Arcella; and her brother, Tom Arcella.

The initial schedules filed in the Chapter 7 case on September 25, 2003 did not designate *any* of these creditor's claims as either "unliquidated" or "contingent". The amounts of the respective debts were stated to be the following: Michael Coffman, $100,000; Judith Arcella, $100,000; and Tom Arcella, $25,000. Neither the amendments to Schedule F made by filings on October 21, 2003 and on January 6, 2004 changed *anything* concerning the description or designation of these debts, despite the fact that the debtor obviously reviewed matters relating to designations in Schedule F to effect the amendments. Then, almost as if by a kind of magic resuscitation of memory function, **after** the objection to Chapter 13 eligibility was filed and served upon her, the debtor amended her Schedule F to state an unliquidated debt to Judith Arcella of $20,308.29; a claim of $0.00 for Michael Coffman; and an unliquidated claim of $25,000 for Tom Arcella— thereby, in the face of an eligibility challenge, converting $225,000 of liquidated, noncontingent unsecured debt into $45,308.29 of unliquidated, unsecured debt. In the Response of the Debtor Tiffany Arcella–Coffman to the Creditors' Offer of Proof in Opposition to Debtor's Motion to Convert to Chapter 13, pages 19–25, the debtor states that she is not in fact personally liable to Michael Hoffman, despite unequivocally stating in all but her last amended schedules that she was. Her counsel's brief states that "(u)nfortunately, when Debtor's schedules *were initially filed* the boxes for 'CONTINGENT', 'UNLIQUIDATED' AND 'DISPUTED' on the line for the claim of Michael Hoffman in Schedule F were not checked as a result of inadvertence. When the error was subsequently discovered, it was promptly corrected in the Amended Schedule F." The problem is that Schedule F obviously had been reviewed not just once, but two more times subsequently to its original filing, prior to the total recategorization of this debt, and the prior reviews and resulting amendments didn't lead to a correction of this apparently totally gross error. Prior amendments *clearly evidence the debtor's ability to differentiate between liquidated and unliquidated debt, and between debts derivative of her involvement in a corporate business and those debts upon which she had direct, personal liability,* and it was not until a challenge was made to the debtor's eligibility under the § 109(e) unsecured debt limitation that the error was recognized and "corrected"—coincidentally in a way that advantaged the debtor in the face of the creditors' eligibility challenge. The first step in the § 109 analysis is review of the debtor's schedules, and the Court is the factfinder with respect to the evidentiary weight to be

**8.** The debtor's "offer of proof" states that approximately $8700.47 was paid to the IRS on April 30, 2004. Because the relevant time at which the debt to the IRS is to be determined for the purpose of the § 109(e) analysis is the date of the filing of the Chapter 7 petition, this payment does not serve to reduce the amount of the debt to the IRS for the purpose of the § 109(e) calculation.

accorded to the schedules in that review. In the face of a 3:1 ratio of totally inconsistent material statements under oath, the Court finds that the debtor's three initial designations of her debt to her husband are more credible that is her last, and that thus—based upon the admissions of her schedules—the debtor's debt to Michael Hoffman is in the amount of $100,000, and that it is "liquidated" and "noncontingent" and thus counts toward the § 109(e) unsecured debt ceiling.

In like manner, the Court finds—based upon the admissions in the debtor's schedules—that her debt to Judith Arcella is in the amount of $100,000, and that this debt is "liquidated" and "noncontingent" and thus counts toward the § 109(e) unsecured debt ceiling.

Finally, based upon the admissions in her schedules, and further based upon the recitation of her offer to prove stated on page 22 of her Response of the Debtor Tiffany Arcella–Coffman to the Creditors' Offer of Proof in Opposition to Debtor's Motion to Convert to Chapter 13, the Court finds that the debtor's debt to Tom Arcella is in the amount of $25,000 as of the date of the filing of this case, and that said debt is "liquidated" and "noncontingent" and thus counts toward the § 109(e) unsecured debt ceiling.

The total of the noncontingent, liquidated "insider" debts is $250,000, and this amount combined with the previously-determined total of other noncontingent, liquidated unsecured debts results in the debtor's having had noncontingent, liquidated unsecured debts—largely by her own admissions—in the amount of $447,298.44 on the date of the filing of her Chapter 7 case, an amount well in excess of the $290,5252 noncontingent, liquidated unsecured debt limitation applicable to her case. The Court thus finds that the debtor is not eligible for relief under Chapter

13 as of the date of the petition which initiated this case, and that she cannot therefore convert this Chapter 7 case to a case under Chapter 13 pursuant to 11 U.S.C. § 706(a) and (d).

Due to the Court's disposition as stated above, it is unnecessary for the Court to determine whether other indebtedness of the debtor, primarily the claims asserted by Automated Reporting Management Systems and Robert Abraham, constitute "liquidated", "noncontingent" debt for the purpose of the debtor's eligibility for Chapter 13 relief under § 109(e).

**IT IS ORDERED** that the motion of Tiffany Ann Arcella–Coffman filed on January 6, 2004—to convert her Chapter 7 case to a case under Chapter 13—is DENIED.

**IT IS FURTHER ORDERED** that the hearing scheduled for December 16, 2004, beginning at 9:00 a.m. is mooted by this order, and that said hearing is hereby removed from the Court's calendar.

**IT IS FURTHER ORDERED** that a status conference will be held on January 6, 2005 at 3:30 o'clock P.M., to determine the scheduling of further proceedings in relation to this case, including matters in relation to the claims of Automated Reporting Management Systems and of Robert Abraham, and matters in relation to Adversary Proceeding No. 03–6317.